IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$179,685.00 SEIZED FROM TD BANK CONVENIENCE CHECKING ACCOUNT ENDING IN 9459,

    Defendant.
_____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***
_____

The United States of America ("United States"), by and through United States Attorney Cole Finegan and Assistant United States Attorney Elizabeth Young, pursuant to Supplemental Rule for Admiralty, Maritime and Asset Forfeiture Actions G(2), states:

## JURISDICTION AND VENUE

1. The United States has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), seeking forfeiture of defendant property based on violations of 18 U.S.C. §§ 1952, 1956, 1957, and 1960. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2. Venue is proper under 28 U.S.C. § 1395, as the defendant property is located and some of the acts described herein occurred in the District of Colorado.

## DEFENDANT PROPERTY

3. Defendant $179,685.00 seized from TD Bank Convenience Checking Account ending in 9459 ("defendant $179,685") was seized on May 13, 2022, and is in

1

the custody of the United States Marshals Service in Denver, Colorado.

## FACTUAL BASIS FOR FORFEITURE

4.      Except as otherwise noted, the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

**Background of Investigation**

5.      The Drug Enforcement Administration ("DEA") is investigating an individual with the last name Guang, and other individuals, for violations of federal drug trafficking and money laundering laws. Investigators learned from a Confidential Source ("CS") that Guang was known to the CS as a black market marijuana distributor and money laundering broker, operating in Oklahoma, Colorado, and other states. The CS also stated that Guang owned a large-scale marijuana farm in Oklahoma.

**Money Laundering Activity**

6.      In September 2021, a law enforcement officer acting in an undercover capacity communicated with Guang using a telephone number provided by the CS regarding contracts for laundering money.

7.      In response, Guang offered the law enforcement officer a contract to pick up $110,000 in U.S. currency in Edmond, Oklahoma. Guang requested that the laundered funds be split three ways, with amounts sent by wire transfer to two separate bank accounts, and the remainder issued to a third individual by cashier's check.

8.      The cash pickup was completed on September 21, 2021.

9.      The $110,000 in U.S. currency was deposited into a bank account and then distributed as follows per the instructions provided by Guang: $30,000 was wired to

a Bank of America account ending in 3579, held in the name of Ling Yan Zheng; $30,000 was wired to a Bank of America account ending in 9399, held in the name of Min Cong Li; and a cashier's check for $46,700 was issued to Pi Yung Liang.

10. After the $110,000 cash pickup was successfully completed, Guang provided the CS with a contract to launder $100,000 in U.S. currency, which was suspected to be illegal marijuana proceeds.

11. Guang informed the CS that a woman, later identified as Jing Li, had $70,000 in U.S. currency in Blackshear, Georgia, and $30,000 in U.S currency in Oklahoma that she was requesting be laundered.

12. The CS told Guang that he would be willing to pick up the $70,000 in U.S. currency in Georgia.

13. Guang then provided the CS with a telephone number to contact Jing Li directly.

14. Undercover law enforcement officers contacted Jing Li and arranged to pick up the $70,000 in U.S. currency from a residence located at 6341 Sun Dell Circle, Blackshear, Georgia. Li confirmed that address and identified herself. An undercover law enforcement officer speaking to Li informed her that the cash would be processed in Denver, Colorado, from a business account prior to being transferred to the Bank of America account she provided to the CS.

15. Investigators observed a grey Toyota Tundra pickup parked at the residence, which was later found to be registered to Bao Sheng Xu and Jing Li.

16. On November 4, 2021, the undercover courier arrived at the residence and met with a man in the driveway and stated that he was there to pick up "70." The

man went back into the residence and returned with a grey supermarket bag that contained $70,000 in U.S. currency, plus an additional $2,100, which was the transaction fee.

17. The $70,000 was then transferred to a Bank of America account provided by Jing Li.

18. On November 17, 2021, the undercover law enforcement officer received a text message from an individual named Dae He. The woman identified herself simply as "He." She told the undercover law enforcement officer that Jing Li referred the undercover officer as someone who could launder money.

19. Dae He requested that $50,000 in U.S. currency be processed and wired to a bank account at TD Bank designated by Dae He. Dae He also agreed to pay a $1,500 service fee for the money to be laundered.

20. More specifically, Dae He requested a pickup of $50,000 in bulk cash from her restaurant located at 471 South Church Street, Homerville, Georgia. Dae He requested that the cash be picked up on November 22, 2021.

21. On November 22, 2021, undercover law enforcement officers in Georgia picked up the $50,000 in U.S. currency from the restaurant located at 471 South Church Street, Homerville, Georgia, and drove it to a neutral location to conduct a free air K-9 sniff of the cash. A law enforcement officer used his police K-9 to conduct the sniff with positive results, indicating the presence of drug odor.

22. The cash was then deposited into a bank account held by the DEA in Georgia. The $50,000 was then transferred to a bank account held by the DEA in Colorado, and eventually transferred by wire to the bank account designated by Dae

He, which was TD Bank checking account ending in 9459, held in the name of Shiliang Liang.

23.     After the funds were in the undercover account held by the DEA, an undercover law enforcement officer sent a text message to Dae He and informed her that the wire transfer to the account would be completed from Denver, Colorado. Dae He requested that the transaction be completed from a personal bank account instead of a business account. The undercover officer asked Dae He for a reason for this request. Dae He replied: "avoiding federal investigation on money transfer".

24.     On the evening of November 22, 2021, Dae He informed the undercover officer via text message that the money was not deposited into the account she designated. The undercover officer responded assuring her that the money was deposited in the bank and the wire was pending.

25.     On November 23, 2021, Dae He informed the undercover officer via text message that only half of the amount, $25,000, was deposited into the designated account. The undercover officer explained to Dae He via text message that the "driver" deposited the bulk cash after 4:00 p.m. local time, which might cause a delay.

26.     On November 27, 2021, Dae He advised the undercover officer by text message that the funds had been deposited into the account she had designated, less a $15 wire processing fee.

**Activity in TD Bank Convenience Checking Account Ending in 9459**

27.     The account provided by Dae He to undercover law enforcement officers was TD Bank Convenience Checking Account ending in 9459. Bank records indicate that this account is held in the name of Shiliang Liang at 17011 29th Avenue, 2nd Floor,

Flushing, New York. Liang is the sole signer on the account.

28.     The customer phone number included in the account registration materials is 718-790-2723. A query of a law enforcement database associated this phone number to Dai He at 471 South Church Street, Cogdell, Georgia.

29.     TD Bank Convenience Checking Account ending in 9459 was opened on or about July 8, 2021.

30.     Bank records indicate that between the account opening through December 23, 2021, deposits into this account totaled $339,939.36. Of this amount, $99,685.00 was later withdrawn due to a bad check/chargeback.

31.     Bank records for TD Bank Convenience Checking Account ending in 9459 shows a $25,000 incoming wire transfer on November 23, 2021 and another $25,000 incoming wire transfer on November 26, 2021.

32.     These deposits correspond with the two $25,000 deposits of laundered funds made at Dai He's request that were comprised of the $50,000 in U.S. currency picked up by undercover law enforcement officers on November 22, 2021 from the restaurant located at 471 South Church Street, Homerville, Georgia.

33.     In addition, the bank records reveal that this account received other large deposits close in time to the known laundered transactions that have the same indicia as the transactions involving the known laundered illegal proceeds. Specifically, these are transfers in large, mostly even amounts from personal bank accounts.

34.     The following is a list of deposits over $10,000 that were deposited into TD Bank Convenience Checking Account ending in 9459 around the time of the known laundered illegal proceeds:

| Post Date | Bank | Remitter/Payor | Amount |
|---|---|---|---|
| 2021-11-23 | DEA Account | | $25,000 |
| 2021-11-26 | Wells Fargo account ending in 3455 (Fort Lee, NJ) | Yuejing Liu | $99,685 |
| 2021-11-26 | DEA Account | | $25,000 |
| 2021-11-29 | Wells Fargo account ending in 1408 (New York, NY) | Hua Zhou | $30,000 |
| 2021-12-08 | Wells Fargo account ending in 2898 (New York, NY) | Shiyao Xu | $50,000 |
| 2021-12-13 | Wells Fargo account ending in 5291 | Huiqiu Feng | $49,685 |
| | | Total | $279,370 |
| | | Total Less $99,685[1] | $179,685 |

**Seizure of Defendant $179,685**

35. On May 13, 2022, the United States seized defendant $179,685 from TD Bank Convenience Checking Account ending in 9459.

36. The DEA started an administrative forfeiture process against defendant $179,685. This included sending notice to Shiliang Liang.

**Shiliang Liang's Administrative Claim**

37. On October 28, 2022, Shiliang Liang filed a claim in the administrative forfeiture process asserting an interest in defendant $179,685.

---

[1] The November 26, 2021 deposit was withdrawn as a chargeback, so the United States only seized $179,685 as forfeitable property.

7

38.     Shiliang Liang's claim stated, among other things: "[I]n or around November 2021, Claimant approached a middleman and agreed to give them cash in exchange for cashier's checks and wire transfers into his TD Bank Account, Acct. #4398029459 (the 'Account')."

39.     Shiliang Liang's claim stated, among other things: "Claimant agreed to pay the middleman $400 for every $10,000 exchanged this way."

40.     Shiliang Liang's claim stated, among other things: "Thereafter, Claimant paid the middleman, and in exchange, the middleman gave Claimant several cashier's checks and facilitated several wire transfers to the Account."

41.     Shiliang Liang's claim stated, among other things:

> Claimant received a total of three cashier's checks from the middleman: 1) A cashier's check dated November 26, 2021, in the amount of $30,000.00, with a remitter of Hua Zhou; 2) A cashier's check dated December 7, 2021, in the amount of $50,000,00, with a remitter of Shiyao Xu; and 3) a cashier's check dated December 10, 2021, in the amount of $49,685.00, with a remitter of Huiqiu Feng. The middleman also facilitated several wire transfers to the Account: 1) A wire transfer in the amount of $25,000.00 from Vista Ventures Unlimited LLC, on or about November 23, 2021; and 2) A wire transfer in the amount of $25,000.00 from Vista Ventures Unlimited LLC, on or about November 26, 2021.

42.     Shiliang Liang's claim stated, among other things: "The amount received from the middleman totaled $179,685.00 (the 'Funds'), the amount in the Account at the time of seizure. Claimant's only contact was with the middleman. Claimant does not know who Hua Zhou, Shiyao Xu, Huigiu Feng, or Visa Ventures Unlimited LLC are, nor has Claimant ever contacted with [sic] them."

43.     Shiliang Liang's claim stated, among other things: "Claimant intended to use the Funds to purchase a home located at 90-32 Shore Parkway, Howard Beach NY

8

(the 'Premises'). In fact, a proposed contract of sale was drafted in connection with Claimant's intention to purchase the Premises. However, due to the seizure of the Funds, the deal fell through."

**Registration as a Money Transmitter**

44.     Pursuant to 18 U.S.C. § 1960(a), it is illegal to knowingly conduct, control, manage, supervise, direct, or own all or part of an unlicensed money transmitting business.

45.     Pursuant to 18 U.S.C. § 1960(b)(1), an unlicensed money transmitting business is a "money transmitting business which affects interstate or foreign commerce in any manner or degree" and

(a)     "is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;"

(b)     "fails to comply with the money transmitting business registration requirements under" 31 U.S.C. § 5330; or

(c)     "otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity."

46.     Pursuant to 18 U.S.C. § 1960(b)(2), "the term 'money transmitting' includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier."

47.     New York Banking Law Section 641(1) states:

No person shall engage in the business of selling or issuing checks, or engage in the business of receiving money for transmission or transmitting the same, without a license therefor obtained from the superintendent as

9

provided in this article, nor shall any person engage in such business as an agent, except as an agent of a licensee or as agent of a payee . . . .

48. New York Banking Law Section 641(2) sets forth the process for applying for a license under New York Banking Law Section 641.

49. Pursuant to 31 U.S.C. § 5330, money transmitting businesses must be registered with the Secretary of the Treasury.

50. Pursuant to 31 U.S.C. § 5330(d)(1), a "money transmitting business" includes any "person who engages as a business in the transmission of currency, funds, or value that substitutes for currency, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system."

51. Shiliang Liang is not registered with the state of New York as a money transmitter.

52. Shiliang Liang is not registered with the Secretary of the Treasury as a money transmitter.

**Conclusion**

53. Based on the facts and circumstances described above, the evidence shows that defendant $179,685.00 is forfeitable as proceeds traceable to or funds involved in violations of 18 U.S.C. §§ 1952, 1956, 1957, and 1960.

## VERIFICATION OF ANDREW SCOTT
## SPECIAL AGENT, DRUG ENFORCEMENT ADMINISTRATION

I, Special Agent Andrew Scott, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

_____
Andrew Scott
Special Agent - DEA

### FIRST CLAIM FOR RELIEF

54. The Plaintiff repeats and incorporates by reference the paragraphs above.

55. By the foregoing and other acts, defendant $179,685.00 from TD Bank Account ending in 9459 constitutes property involved in racketeering, in violation of 18 U.S.C. § 1952(a), and is therefore forfeitable to the United Stated pursuant to 18 U.S.C. § 981(a)(1)(C).

### SECOND CLAIM FOR RELIEF

56. The Plaintiff repeats and incorporates by reference the paragraphs above.

57. By the foregoing and other acts, defendant $179,685.00 from TD Bank Account ending in 9459 constitutes property that represents proceeds of unlawful activity that was then involved in a financial transaction with the intent to promote the carrying on of specified unlawful activity or knowing that the transaction is designed in whole or in part to (i) conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity in violation of 18 U.S.C. § 1956(a)(1), and is therefore forfeitable to the United States pursuant to 18

U.S.C. § 981(a)(1)(A) and (C).

### THIRD CLAIM FOR RELIEF

58. The Plaintiff repeats and incorporates by reference the paragraphs above.

59. By the foregoing and other acts, defendant $179,685.00 seized from TD Bank Account ending in 9459 constitutes criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity that individuals knowingly attempted to utilize or did utilize in a monetary transaction in violation of 18 U.S.C. § 1957, and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

### FOURTH CLAIM FOR RELIEF

60. The Plaintiff repeats and incorporates by reference the paragraphs above.

61. By the foregoing and other acts, defendant $179,685.00 seized from TD Bank Account ending in 9459 constitutes funds that individuals conspired to utilize to violate provisions of 18 US.C. §§ 1956 and 1957 in violation of 18 U.S.C. § 1956(h), and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

### FIFTH CLAIM FOR RELIEF

62. The Plaintiff repeats and incorporates by reference the paragraphs above.

63. By the foregoing and other acts, defendant $179,685.00 seized from TD Bank Account ending in 9459 constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960, and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

WHEREFORE, the United States prays for entry of a final order of forfeiture for

defendant $179,685.00 from TD Bank Account ending in 9459 in favor of the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 14th day of April 2023.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: s/ *Elizabeth Young*
Elizabeth Young
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0402
E-mail: Elizabeth.Young2@usdoj.gov
*Attorney for the United States*